UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>OSCAR GUADRON-DIAZ,<br>Defendant. | Case No. 19-cr-00230-EMC-1<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I. TRIAL DATE AND LENGTH OF TRIAL

Jury selection shall be held on March 23, 2020 at 8:30 a.m. in San Francisco, Courtroom 5, 17th Floor before Judge Edward M. Chen. The trial shall begin upon the conclusion of jury selection; a total of two trial days are anticipated, including March 23. Trial shall last from 8:30 a.m. to 4:30 p.m. on March 23, 2020 and from 8:30 a.m. to 2:00 p.m. on March 24, 2020. If necessary, trial shall continue from 8:30 a.m. to 2:00 p.m. on March 25, 2020 and March 27, 2020. The Court is dark on Thursdays.

## II. STIPULATIONS OF FACT

The parties filed the following stipulations, *see* Docket No. 60:

1. The Taurus brand PT111 Millennium G2 9mm semi-automatic pistol with extended magazine, offered as Exhibit 1, is the same firearm and magazine recovered by San Francisco police on January 25, 2018, from the backyard of 851 Huron Avenue, in San Francisco, California.

2. The 12 rounds of Sig Sauer 9 mm ammunition and 5 rounds of Winchester 9 mm ammunition, offered as Exhibit 2, are the same ammunition that was recovered

with the firearm and extended magazine offered as Exhibit 1 by San Francisco police on January 25, 2018, from the backyard of 851 Huron Avenue, in San Francisco, California.

3. The Taurus brand PT111 Millennium G2 9 mm semi-automatic pistol, offered as Exhibit 1, travelled in foreign commerce between Brazil and the United States. The Taurus brand PT111 Millennium G2 9 mm semi-automatic pistol, offered as Exhibit 1, also travelled in interstate commerce from one state to another.

4. The 12 rounds of Sig Sauer 9 mm ammunition and 5 rounds of Winchester 9 mm ammunition, offered as Exhibit 2, travelled in interstate commerce from one state to another.

5. The forensic phone extraction report previously produced in discovery at OGD-00370, offered as Exhibit 3, was extracted from Oscar Guadron-Diaz's cellphone that was seized from him by San Francisco police on January 25, 2018.

6. The photographs offered as Exhibit 4 are photographs that were extracted from Oscar Guadron-Diaz's cellphone that was seized from him by San Francisco police on January 25, 2018.

7. The messages, communications and photographs offered as Exhibit 5 were extracted from Oscar Guadron-Diaz's cellphone that were seized from him by San Francisco police on January 25, 2018. Pages 6 through 10 of Exhibit 5 contain[] a fair and accurate English translation of the messages that were sent in Spanish.

8. The videos offered as Exhibit 6 were extracted from Oscar Guadron-Diaz's cellphone that were seized from him by San Francisco police on January 25, 2018.

At the final pretrial conference, the parties indicated that they have agreed on the authenticity and admissibility of the photos and text messages that the Government seeks to admit at trial.

### III. MOTIONS IN LIMINE

A. Government's Motions in Limine

The Government filed nine Motions in Limine. *See* Docket No. 43 ("Gov. MIL").

Defendant had no objection to five of those motions. *See* Docket No. 53 ("Def. Opp."). Accordingly, the Court **GRANTS** the Government's fourth ("The Defendant Should Not Be Allowed to Reference Punishment in Front of the Jury"), fifth ("The Defendant Should Be Precluded From Introducing Information Not in Evidence to the Jury"), seventh ("Extrinsic Evidence for Impeachment Should Be Precluded"), eighth ("The Defendant Should Be Required to Proffer a Good-Faith Basis for Any *Henthorn*-Type Inquiry of a Law Enforcement Witness"), and ninth ("The Defendant Should Be Required to Provide Some Evidentiary Basis for Any Claim of an Affirmative Defense") Motions in Limine.

As to the Government's first Motion in Limine ("Evidence of Defendant's Text Message Conversations Should Be Admitted Pursuant to Fed. R. Evid. 801(d)(2)(A) and Fed. R. Evid. 801(c)(2)(A)"), an updated set of exhibits was provided to the Court, and the parties indicated at the final pretrial conference that they have agreed to the admission of the text messages included in the updated set of exhibits. Accordingly, the Court **DENIES** the Government's first Motion in Limine as moot.

The contested Motions in Limine are discussed below.

1. <u>Individual Photographs on Defendant's Phone of Defendant Holding the Obliterated Serial Number Gun Should Be Admitted as Relevant, Highly Probative Evidence</u>

Through its second Motion in Limine, the Governments seeks to admit "[p]hotographs showing the defendant holding the firearm with obliterated or altered serial number" and argues that they "are highly probative of the defendant's possession of the firearm." Gov. MIL at 2 (citing Fed. R. Evid. 401). The photographs show Defendant with the firearm at issue in this case and are "time-stamped a month before the date charged in the indictment"; the Government contends that they are "direct evidence of the offense" and "highly probative evidence that the defendant knowingly possessed the charged firearm long enough to know that it had an obliterated or altered serial number." *Id.*

Defendant "concedes that the photos of him holding the firearm at issue in this case are relevant and admissible." Def. Opp. at 3. However, Defendant does object to the photographs of

3

"other people possessing firearms," asserting that they are "not needed to prove that Mr. Guadron-Diaz in fact possessed the gun charged in this case." *Id.* at 5. He asserts that they "are simply not relevant and should be excised from the exhibits." *Id.*

At the final pretrial conference, the Government provided versions of the contested photographs in which the other people in the photos are blurred, although not fully removed. Defendant contended that the images were insufficiently blurred, and the Government agreed to further alteration. The parties were directed to meet and confer in order to reach an agreement as to the images to be used as exhibits at trial. Accordingly, the Court **HOLDS IN ABEYANCE** the Government's second Motion in Limine, pending resolution of the issue by the parties.

2. The Opinion Testimony of Agent Timbang Should be Admitted

Through its third Motion in Limine, the Government seeks to admit the testimony of ATF Special Agent Richard P. Timbang as either lay opinion or expert testimony. Gov. MIL at 2. The Government represents that Agent Timbang will testify: (1) "based on his training and experience and examination of the evidence, that the firearm possessed by the defendant has serial numbers that have been obliterated, altered, or removed," (2) "based on his training and experience, [about] the general purpose, requirements, and location of manufacturer serial numbers on firearms," and (3) "regarding his review of the communications and photographs related to firearms located on the defendant's cellphone, and his interpretation of photographs depicting firearms and of the meaning of certain references to firearms-related terms, including code or slang terms, used by the defendant and his associates in those communications." *Id.* at 3. As discussed at the final pretrial conference, Agent Timbang's testimony is properly characterized as expert testimony because it is based on his training and specialized experience; as such, it is subject to the requirements of Federal Rule of Evidence 702.

With respect to the first topic of Agent Timbang's proposed testimony (obliteration of the serial number), Agent Timbang is permitted to testify as to his own observations of the serial numbers on the weapon at issue and how those serial numbers appear to him. *See, e.g.*, *United States v. Horey*, 36 F.3d 1106 (10th Cir. 1994) ("an expert in firearms and tool mark examination testified the revolver's serial number was partially obscured or obliterated"); *United States v.*

4

*Pena-Torres*, No. 1:14CR310 JCC, 2014 WL 7272876, at *6 (E.D. Va. Dec. 18, 2014), *aff'd,* 620 F. App'x 200 (4th Cir. 2015) (noting that "a firearms expert . . . testified about the obliterated serial number"). However, he is directed to refrain from offering a legal conclusion about whether the serial number is "removed, obliterated, or altered." That determination is for the jury. Of course, a proper foundation for the basis of his observations must be laid.

With respect to the second proposed topic of Agent Timbang's testimony (general information about the "purpose, requirements, and location of manufacturer serial numbers on firearms"), Agent Timbang will be permitted to offer expert testimony regarding "the general purpose, requirements, and location of manufacturer serial numbers on firearms." However—particularly with respect to any testimony elicited about the *purpose* of serial numbers on firearms—the Government must lay an adequate foundation, *i.e.* it must make clear how Agent Timbang's background, training, and experience have qualified him to testify to each issue. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (describing the importance of ensuring reliable bases for expert opinions); *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (discussing the importance of assessing relevance and reliability with respect to expert testimony).

With respect to the third proposed topic of Agent Timbang's testimony (decoding the meaning of certain firearms-related terms used by Defendant and his associates in text messages), the Government indicated at the final pretrial conference that the only phrase on which it wished to elicit testimony was "G2 9mm," which is associated with the gun's maker and gauge. Assuming the Government is able to and does demonstrate that Agent Timbang is qualified to testify to this topic pursuant to Rule 702, he will be permitted to testify as to that phrase. *See, e.g.*, *United States v. Skates*, No. 15-CR-00285-LHK, 2019 WL 634649, at *2 (N.D. Cal. Feb. 14, 2019) (identifying slang as one of the topics about which a gang expert may generally testify); *United States v. Williams*, No. 3:13-CR-00764-WHO-1, 2017 WL 4310712, at *17 (N.D. Cal. Sept. 28, 2017) (permitting an officer "to give expert opinion testimony on a narrow set of questions concerning slang terms"); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, No. 2:06-CVB-2879 GEBKJM, 2008 WL 2441067, at *2 (E.D. Cal. June 13, 2008) (characterizing the police interpretation of "slang and code words used by drug dealers" as expert

5

testimony).

Thus, the Court **GRANTS** the Government's third Motion in Limine, subject to the requirements and restrictions outlined above.

### 3. The Court Should Reserve Any Ruling on the Admissibility of Evidence Under Rule 404(b)

The Government notes that "the defendant has not advised the government of what defense he intends to present, if he intends to present one at all," and as a result, it requests that the Court "reserve any ruling on the admissibility of evidence under Rule 404(b) until closer to trial, or even during trial." Gov. MIL at 8. While the Government does not specify what specific evidence would be subject to Rule 404(b) analysis, the Motion in Limine refers to the possibility that Defendant might allege that he is unfamiliar with firearms or that he has never owned or operated one. *Id.* The Government would then seek to introduce evidence of "other instances of defendant possessing, selling, or operating firearms to establish knowledge and/or the absence of mistake or accident. " *Id.* However, as Defendant notes, should Mr. Guadron-Diaz "open the door" to such evidence, the Court could revisit its earlier ruling(s). Def. Opp. at 11. Accordingly, the Court **DENIES** the Government's request that it reserve ruling on the admissibility of evidence under Rule 404(b). Should the Government believe it necessary to revisit this ruling during the course of trial, it may move the Court for permission to do so.

### 4. The Government's Sealed Motion in Limine

On March 2, 2020, the Government filed a sealed Motion in Limine, *see* Docket No. 62, which was addressed by the Court at the final pretrial conference. Counsel for the Defendant indicated that she did not intend to engage in the line of questioning which the Government had requested be prohibited. The issue identified in the Government's sealed Motion in Limine has been resolved. In the absence of any objection from Defendant, the Court **GRANTS** the sealed Motion in Limine.

B. Defendant's Motions in Limine

Defendant filed eight Motions in Limine. *See* Docket No. 41 ("Def. MIL"). As discussed below, the Government believes that four of those motions are moot, either as a consequence of

6

the parties' stipulations or because the evidence being objected to is not intended to be introduced as substantive evidence. *See* Docket No. 54 ("Gov. Opp.").

### 1. The Forensic Extraction Reports

Defendant seeks to exclude the "two extraction reports concerning Mr. Guadron-Diaz's cell phone apparently . . . created using 'Cellebrite' or 'UFED' software to download all the data stored on the phone." Def. MIL at 11. However, at the final pretrial conference, the Government indicated that—in light of the parties' stipulations—it does not intend to introduce the forensic extraction reports in their entirety at trial. In light of that fact, the Court **DENIES** this motion as moot.

### 2. Law Enforcement Incident Reports

Defendant seeks to exclude the San Francisco Police Department incident reports (Exhibit 9) and the ATF arrest report (Exhibit 12) on the grounds of hearsay and relevancy. Def. MIL at 12. However, the Government responds that it does not intend to introduce these reports as substantive evidence at trial, but instead intends to call law enforcement witnesses to testify. Gov. Opp. at 6. It further explains that the reports are "marked for identification, in case the reports are needed to refresh recollection at trial." *Id.* at 7. As a result, the Court **DENIES** this motion as moot.

### 3. Evidence of Defendant's Prior Arrest on Homicide Charges

Defendant argues that the Court should exclude any mention of the underlying homicide investigation and Mr. Guadron-Diaz's earlier arrest as part of that investigation. Def. MIL at 8. The Government submitted proposed language that could be shared with the jury regarding the prior murder investigation, but Defendant objected to that language. At the final pretrial conference, Defendant reaffirmed that he "will not assert at trial that the car-stop and seizure of the gun were unlawful in any respect. The lawfulness of the detention simply will not be at issue at trial." Def. MIL at 8. In light of that information, the Court noted that a full stipulation to the fact that the stop and seizure were lawful should preclude adverse inferences by the jury as to the reason for (or legality of) the stop. The Court **DIRECTS** the parties to meet and confer to see if a stipulation can be reached; the parties shall not refer to the fact that Defendant or his home were

7

specifically being surveilled or that he was the subject of a criminal investigation at that time, but a general context for leading up to the chase will be permitted. Pending that stipulation, the Court **HOLDS IN ABEYANCE** Defendant's Motion in Limine on this issue.

    4.    <u>Evidence Concerning Alleged Gang Membership</u>

Although the Government expressly disclaims an intention to offer any evidence of gang affiliation in this case, Defendant—out of an abundance of caution—requests "that the Court order such evidence excluded at trial and direct the prosecution to instruct their San Francisco Police Department witnesses to refrain from mentioning any evidence, or stating their own opinion, that Mr. Guadron-Diaz might be a gang member or associate." Def. MIL at 9.

Notwithstanding the Government's disclaimer, the Court **GRANTS** this motion and **DIRECTS** the Government to admonish any law enforcement witnesses to refrain from mentioning any evidence that might suggest or stating their own opinion that Mr. Guadron-Diaz is or might be a gang member or associate. In addition, the Government shall not identify any police officer witness as participating in any gang taskforce or elicit testimony about participation in any gang taskforce. Officers may indicate they have, as a general matter, engaged in special investigations without tying it to this case specifically.

    5.    <u>Photographs and Videos of Firearms (Not the Firearm at Issue in This Case)</u>

This Motion in Limine is resolved through the Court's resolution of the Government's first Motion in Limine, above. Thus, Court **DENIES** the Motion in Limine as moot.

    6.    <u>Photographs and Videos of Other People Possessing Firearms or Alcohol</u>

This Motion in Limine is resolved through the Court's resolution of the Government's second Motion in Limine, above. Thus, Court **DENIES** the Motion in Limine as moot.

## IV.    <u>WITNESSES</u>

The government has provided the following list of witnesses, *see* Docket No. 58 ("Corrected Witnesses List"):

    1. Richard Timbang – Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

    2. Matthew P. Sullivan – San Francisco Police Department

    3. Patrick T. Griffin – San Francisco Police Department

    4. Matthew T. Mason – San Francisco Police Department

    5. Brian Guiney – San Francisco Police Department

    6. Scott W. Warnke – San Francisco Police Department

However, the Government "reserves the right to supplement or amend this list as necessary." *Id.* Lastly, Defendant contends that he "cannot at this time disclose any witnesses while preserving his Sixth Amendment right to a fair trial." Def. Brief at 4.

## V.   EXPERTS

As discussed above in Section III.A.2, Agent Timbang will be permitted to testify as an expert, subject to the requirements of Federal Rule of Evidence 702.

## VI.   EXHIBITS

The government has submitted an exhibit list identifying 14 items, but that list "does not include all exhibits that the government may seek to use for refreshing recollection, impeachment, or rebuttal purposes" and "[t]he government respectfully reserves the right to amend this list prior to and during trial as necessary." *See* Docket No. 45. Defendant reports that "[a]t this time, [he] does not anticipate admitting any exhibits at trial." Def. Brief at 3.

## VII.   *VOIR DIRE* AND SUMMARY OF THE CHARGE

The Court will ask *voir dire* questions set forth below. Each party will then have 20 minutes to conduct their own supplemental *voir dire*.

**General Background**

  1. Name

  2. City of residence

  3. Occupational status

  4. Who is (or was) your employer?

  5. How long have you worked (or did you work) for that employer?

  6. Organizations

  7. Hobbies

  8. Significant other?

  9. Significant other's occupation

10. Children (including ages)

11. If ever a juror on another case

12. If ever a grand juror

13. If ever in the military

14. Source of your news

**People in the Case**

15. Do you know the defendant, Oscar-Guadron-Diaz, or the defendant's attorney, Juliana Drous; or counsel for the government, Daniel Pastor or Lina Peng, or Paralegal Specialist Madeline Wachs, or Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Richard Timbang?

16. I'm going to read a list of potential witnesses who might appear to testify. Do you know any of them?

    a. Matthew P. Sullivan (SFPD)

    b. Patrick T. Griffin (SFPD)

    c. Matthew T. Mason (SFPD)

    d. Brian Guiney (SFPD)

    e. Scott. W. Warnke (SFPD)

    f. Brian D. Rodriguez (SFPD)

**Opinions About or Experiences with Law Enforcement and the Legal System**

17. Have you or has anyone close to you ever worked in a law enforcement department or agency?

18. Have you or has anyone close to you ever worked for a prosecutor's office, public defender's office, or the office of a private criminal defense attorney?

19. Have you or has anyone close to you ever worked in any way in the criminal justice system?

20. Do you have any strong positive or negative opinions about the San Francisco Police Department, the Bureau of Alcohol, Tobacco, Firearms, and Explosives or the United States Department of Justice?

21. Do you have any strong positive or negative opinions about law enforcement generally?
22. Would you be able to follow the Court's instruction that you must not give the testimony of a law enforcement witness any less or more credibility simply because he/she is with law enforcement than you do to the testimony of a non-law enforcement witness?
23. Have you or has anyone close to you ever been investigated for, arrested for, or charged with a crime?
24. Have you or has anyone close to you ever been the victim of a crime?
25. Have you ever had an unpleasant experience in court or involving a judge, prosecutor, or defense attorney?

**Conduct of the Defendant**

26. If Mr. Guadron-Diaz chooses not to testify in his own defense, would that cause any of you to suspect that he is guilty?
27. Would you be able to follow the Court's instruction not to hold it against any defendant who exercises his/her constitutional right not to testify?

**Opinions About Firearms**

28. The defendant is charged with a crime related to possession of a firearm. Is there anything about the nature of this charge that would make you unwilling, unable or reluctant to serve as a juror in this particular case?
29. Do you have any feelings or opinions about firearms that could affect your ability to be a fair juror in this case?
30. Do you have strong feelings about the enforcement of gun laws?
31. Do any of you own a firearm?
32. Do any of you own a handgun?
33. Have you or someone you know been the victim of a crime involving a firearm?

**Fitness to Serve as a Juror**

34. As a juror, your duty is to apply the law as I instruct you, regardless of whether you

agree or disagree with it. Do you have any doubts or concerns about that?

35. The defendant is presumed innocent unless and until the government proves him guilty beyond a reasonable doubt. Do you have any doubts or concerns with your ability to follow the Court's instruction on this?

36. If after hearing all the evidence in this case, you thought that the defendant was probably guilty, but you were not convinced of guilt beyond a reasonable doubt, would you have trouble returning a verdict of not guilty?

37. Do you have strong religious, philosophical or moral beliefs that would make it difficult for you to sit in judgment of another person?

38. Have you read or heard anything about this case other than what you've heard here today?

39. Do you have any difficulty understanding or reading the English language?

40. Is there anything I have not asked you about that you believe could affect your ability to be a fair and impartial juror?

41. It is my duty, as judge, to determine punishment if you find, after considering the evidence and my instructions as to the law you must apply, that the defendants are guilty of the count in the Indictment. The law does not permit you to consider the issue of punishment because there are factors, having nothing to do with this trial, which will determine the appropriate sentence, if any. Would any of you be unable to decide this case without regard to potential punishment?

42. Is there anything else that I have not asked you about that causes you to believe that you could not sit as a fair and impartial juror in this case?

**Summary of the Charge**

The Court will provide the following summary of the charge or agreed to by the parties: "In the indictment, the defendant, Oscar Guadron-Diaz, is charged with the crime of possessing a firearm with its serial number removed, obliterated, or altered. The Defendant denies the charge."

### VIII. <u>JURY INSTRUCTIONS AND VERDICT FORM</u>

The Court notes that is has adopted the language and numbering of the Ninth Circuit's

Manual of Model Criminal Jury Instructions (2020). In addition to the Court's standard instructions [Ninth Circuit Model Criminal Jury Instructions ("MJI") 1.1-1.11, 1.16, 2.1, 2.12, 3.1-3.2, 3.5-3.9, 7.1-7.6], the parties propose the additional instructions discussed below.

The Government requests the inclusion of MJI 2.3 ("Stipulations of Fact"), MJI 3.3 ("Defendant's Decision Not to Testify") (if applicable), MJI 3.4 ("Defendant's Decision to Testify") (if applicable), MJI 3.10 ("Activities Not Charged"), MJI 4.3 ("Other Crimes, Wrongs or Acts of Defendant") (although Defendant notes that, depending on what evidence is admitted, this instruction may not be applicable), MJI 3.15 ("Possession – Defined"), MJI 4.14 ("Opinion Evidence, Expert Witness"), MJI 4.16 ("Charts and Summaries Not Admitted Into Evidence"), and MJI 5.7 ("Knowingly"). *See* United States' Proposed Jury Instructions, Docket No. 46.

In addition to several instructions already requested by the Government, Defendant requests the inclusion of MJI 2.10 ("Other Acts by the Defendant") (if such evidence is admitted), MJI 3.7 ("What is Not Evidence"), and MJI 4.15 ("Dual Role Testimony") (re: Agent Timbang). *See* Def. Brief. At the final pretrial conference, the parties noted that no "prior acts" of Defendant evidence is expected to come in; thus, the parties agreed that MJI 2.10 need not be given. The Court circulated a proposed draft of the instructions and took comments at the hearing.

The parties disagree about the proper instruction regarding the elements of the charged offense. Defendant requested the inclusion of MJI 8.68 ("Transportation, Shipment, Possession or Receipt in Commerce with Removed or Altered Serial Number (18 U.S.C. § 922(k))"), and the Government proposed a modified version of that instruction, *see* Docket No. 46 at 19. After discussing the issue with the parties, the Court has adopted the following instruction, based on the language of *United States v. Carter*, 421 F.3d 909 (9th Cir. 2005).

> The defendant is in charged in Count One of the indictment with possessing a firearm which had the serial number removed, obliterated or altered in violation of Section 922(k) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant knowingly possessed a black Taurus Model PT111 pistol;
>
> Second, that firearm had at some point traveled from one

        state to another or between a foreign nation and the
United States;

        Third, the serial number of the firearm had been removed,
obliterated or altered; and

        Fourth, the defendant knew that the serial number had been
removed, obliterated, or altered.

The government is not required to prove that the defendant himself removed, obliterated or altered the serial number. A firearm's serial number is "altered or obliterated" if the serial number is changed in a manner that makes it appreciably more difficult to discern; it need not make tracing the gun impossible or extraordinarily difficult.

The Court gave the parties until 12:00 Noon, March 13, 2020, to file additional comments.

Lastly, the Government submitted a proposed verdict form, *see* Docket No. 48, and Defendant agrees to that proposed verdict form. Def. Brief at 5.

This order disposes of Docket No. 62.

**IT IS SO ORDERED**.

Dated: March 12, 2020

_____
EDWARD M. CHEN
United States District Judge