1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  DANIEL PASTOR (CABN 297948)
   LINA PENG (NYBN 5150032)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-6788
       FAX: (415) 436-7234
8      daniel.pastor@usdoj.gov

9  Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR19-0230 EMC |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL** |
| v. | |
| OSCAR GUADRON-DIAZ, | Hearing Date: January 20, 2021 |
| Defendant. | Time: 1:00 p.m. |
| | Trial Date: November 2, 2020 |

**INTRODUCTION**

The United States opposes Defendant Oscar Guadron-Diaz's motion for a new trial based on a conversation between ATF Agent Richard Timbang and an alternate juror that occurred on November 2, 2020 after closing arguments in the hallway outside the trial courtroom (Courtroom 9 on the 19th Floor). The jury had already retired to deliberate in Courtroom 8 further down the hall when the conversation occurred.

The Court questioned Agent Timbang about conversation on the record on the morning of November 3, 2020, before the jury returned its verdict. Agent Timbang stated that the alternate approached him and the two engaged in small talk that included a discussion of the alternate's

background as an immigrant to the United States from Iran. Neither Agent Timbang nor members of the prosecution team who saw him speaking to the alternate recall any juror being present in the hallway. When the Court questioned Agent Timbang that morning, defense counsel raised no argument that any member of the jury had been influenced.

The improper contact cited by the defendant's motion for a new trial concerns an alternate – not a juror who deliberated. Furthermore, there is no evidence that the hallway conversation affected the jury's deliberations. Finally, the Court had previously instructed the jurors that they had a duty to ignore things they might overhear or see outside the courtroom.

The defendant's speculative assertion that a juror *might have* observed the conversation between the alternate and the agent does not satisfy the defendant's burden to "present evidence of a contact sufficiently improper to raise a credible risk of affecting the outcome of the case." *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017). Accordingly, the presumption of prejudice, which may arise in cases of improper contact with jurors, does not apply to the circumstances here. Defendant's speculation that a juror might have observed the hallway conversation does not trigger a presumption of prejudice to the defendant's right to an impartial jury. *Id.* Even if a juror had come out of the deliberations, and had noticed the conversation, that juror had already been instructed by the Court to ignore such a hallway conversation and not to allow it to influence his or her view of the case.

**BACKGROUND**

On December 2, 2020, the trial in this case was held in Courtroom 9 on the 19th Floor of the federal courthouse at 450 Golden Gate Avenue in San Francisco. Due to the special procedures in place to prevent the spread of COVID-19, the jury deliberation room was Courtroom 8. The case was submitted to the jury around 2 p.m., and the jurors left Courtroom 9 to deliberate in Courtroom 8. The Court then briefly addressed the parties. The jury deliberated until about 3 p.m. that day.

At some point before 3 p.m., Madeline Wachs, Document Management Analyst contractor with the United States Attorney's Office, went to retrieve equipment and materials used in the trial from the trial courtroom (Courtroom 9). Declaration of Madeleine Wachs in Support of United States' Opposition to Defendant's Motion for a New Trial ("Wachs Decl.") ¶ 2. Hector Lopez, supervisory legal administrative specialist with the United States Attorney's Office accompanied her. *Id.* ¶ 2;

Declaration of Hector Lopez in Support of United States' Opposition to Defendant's Motion for a New Trial ("Lopez Decl.") ¶ 2.  As they approached Courtroom 9, Ms. Wachs and Mr. Lopez observed Special Agent Richard Timbang engaged in a conversation with an alternate juror.  Wachs Decl. ¶ 3; Lopez Decl. ¶ 3.  Agent Timbang and the alternate were standing just outside the trial courtroom (Courtroom 9) during the entirety of the conversation.  Declaration of Richard Timbang in Support of United States' Opposition to Defendant's Motion for a New Trial ("Timbang Decl.") ¶ 3; Wachs Decl. ¶ 3; Lopez Decl. ¶ 3.  The conversation lasted approximately 10 to 15 minutes, and it did not concern the case.  Timbang Decl. ¶ 3.  Ms. Wachs and Mr. Lopez did not see anyone else in the hallway when they observed Agent Timbang and the alternate juror. Wachs Decl. ¶ 4; Lopez Decl. ¶ 4.  Agent Timbang did not see anyone else in the hallway during the conversation, except a building maintenance person. Timbang Decl. ¶ 4.

The government alerted defense counsel and the Court to the conversation the same afternoon, and the Court addressed Special Agent Timbang and the parties the next morning.  The Court questioned Agent Timbang, in relevant part, as follows:

| | |
|---|---|
| THE COURT: | Was there anyone else present, any of the other jurors? |
| SPECIAL AGENT TIMBANG: | I don't think so, no. |
| THE COURT: | Where were the 12 jurors; were they already in the courtroom? |
| SPECIAL AGENT TIMBANG: | Yes, they were still in the courtroom.  We were just right outside the door. |
| THE COURT: | This was after we adjourned for deliberation? |
| SPECIAL AGENT TIMBANG: | Yes |
| THE COURT: | None of the other alternates were around? |
| SPECIAL AGENT TIMBANG: | No, sir.  I don't believe so. |
| THE COURT: | Just the one? |
| SPECIAL AGENT TIMBANG: | Yes. |

. . .

After the Court questioned Agent Timbang, the Court asked defense counsel to comment, and

defense counsel stated that the remedy should be to excuse the alternate juror with whom Agent Timbang had spoken. Trial Tr. 488:22-489:6. The Government concurred, and the Court stated that it would excuse the alternate juror were alternates needed. *Id.* 489:7-23. No other motions were made by the defense at the time. The jury returned a verdict of guilty on Count One at approximately 9:18 a.m. that morning. Tr. 495:22-497:14.

The defense has now filed a motion for a new trial on the basis of the hallway conversation. In support, the defense has filed a declaration from Lindsay Page, a licensed private investigator retained by the Defendant. In her declaration, among other things, Ms. Page states that she interviewed the alternate juror on November 12, 2020. Ms. Page's declaration, without clearly attributing any statements to the alternate juror, states that the alternate juror's conversation with Agent Timbang occurred while the two were standing outside Courtroom 8 and that Ms. Page believes jurors deliberating within Courtroom 8 could have observed the conversation between the alternate and Agent Timbang. Page Decl. at 1-2.

**ARGUMENT**

Agent Timbang's brief conversation with an alternate juror who did not deliberate, and who would have been excused had alternates been needed, does not warrant a new trial. The Defendant has not met his burden of showing that there is a credible risk that it influenced the verdict. The Defendant does not claim that any deliberating juror overheard the conversation, and the Defendant has not put forth evidence establishing that any juror witnessed the conversation. In fact, the record demonstrates the opposite. Even if, assuming *arguendo*, that a juror had caught a glimpse of the conversation through the window of the door in the courtroom where the jury was deliberating, the Defendant still cannot establish a credible risk that it influenced the verdict.

**I.    The Hallway Conversation Does Not Trigger the Presumption of Prejudice to the Defendant.**

**A. Legal Standard**

Given "the practical impossibility of shielding jurors from all contact with the outside world, and also that not all such contacts risk influencing the verdict," the defendant bears the burden of establishing that outside contact with a *juror* raises a credible risk of influencing the verdict in order to

trigger a presumption of prejudice. *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017). Defendant cannot meet that burden by presenting "threadbare or speculative allegations of misconduct." *Id.* Allegations "involving prosaic kinds of jury misconduct . . . such as chance contacts between witnesses and jury members – while passing in the hall or crowded together in an elevator" do not trigger the presumption. *Id.* (citations omitted). Defendant "must present evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case" in order to trigger the presumption that he was prejudiced. *Id.*; *see, e.g., United States v. Marques*, 600 F.2d 742, 747 (9th Cir. 1979) (affidavit stating that unnamed juror saw the four defendants entering a car during a recess did not satisfy defendant's "burden of persuading the trial court that the allegation warranted a new trial, or at least further inquiry").

The identity of the parties and the nature of the contact are relevant to assessing the context of the contact and determining whether it was sufficiently improper to raise a credible risk of affecting the outcome of the case. *Godoy*, 861 F.3d at 967. "Other factors may include the length of the contact, evidence of actual impact *on the juror*, and the possibility of eliminating prejudice through a limiting instruction." *Id.* at 967 (quoting *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 697-98 (9th Cir. 2004) (emphasis added) (original punctuation omitted)). Even "highly troubling contacts do not *necessarily* raise a presumption of prejudice." *Id.* at 967 (emphasis in original).

At step one of the inquiry, the Court must consider "the full context of the contact to determine whether a *credible* risk of prejudice exists." *Id.* (emphasis in original). Even contact between a juror and a government agent "about the case may be *insufficient* to trigger the presumption if the surrounding circumstances show the contact was innocuous." *Id.* (emphasis added). "Inherent in the first step of *Godoy* is first determining whether the contact was 'sufficiently improper' and then determining whether that improper contact had a 'credible risk of influencing the verdict.'" *Clark v. Chappell*, 936 F.3d 944, 972 (9th Cir. 2019). "If, and only if, the court finds that these steps are satisfied is the presumption triggered and the subsequent steps reached." *Id.*

At step two of the inquiry, "[o]nce a defendant shows a possibly prejudicial contact, the presumption of prejudice attaches, and the burden shifts to the [government] to prove the contact was harmless." *Id.* at 968. The government would be required to "rebut the presumption by pointing to some

evidence contrary to the evidence that established it." *Id.* In cases where the presumption of prejudice attaches due to a sufficiently improper contact with a juror, the prosecution must often "seek evidence from the jurors themselves [as well as] from the outside party who had contact with the jury." *Id.* at 968-69 (citing cases where the prosecution presented evidence to rebut a presumption of prejudice).

## B. There Is Not a Credible Risk the Conversation Here Influenced the Verdict

Each of the relevant factors about the hallway conversation in this case shows that the Defendant does not satisfy his burden of establishing a credible risk that the contact influenced the verdict.

First, the contact was with an *alternate* who played no role in the jury's deliberations and who would have been excused were alternates needed. The contact with the alternate juror, logically, could not have influenced the verdict here because the alternate juror did not contribute to the verdict whatsoever. Defendant has cited no case suggesting that a government agent's contact with a non-deliberating juror could raise a presumption of prejudice. All of the cases cited by the defense involve contact with a juror who deliberated. Because the contact here did not involve a juror, this case differs markedly from cases where the Ninth Circuit has granted a new trial or required an evidentiary hearing. *See Caliendo v. Warden of California Men's Colony*, 365 F.3d 691 (9th Cir. 2004) (twenty-minute conversation between law enforcement witness and three jurors outside courtroom during recess in deliberations); *United States v. Brande*, 329 F.3d 1173, 1175-77 (9th Cir. 2003) (contact between juror and court officer, in which court officer questioned juror's ability to find defendants guilty of a crime given juror's religious beliefs, required evidentiary hearing); s*ee also Sassounian v. Roe*, 230 F.3d 1097, 1109 (9th Cir. 2000) (discussing whether jury's exposure to extrinsic evidence constitutes reversible error in terms of the extent material discussed in deliberations, for how long, and timing of introduction relative to verdict).

In this case, there is no allegation of jury tampering or improper attempts to influence the jury. *Compare with United States v. Angulo*, 4 F.3d 843, 846 (9th Cir. 1993) (juror discussed receiving threatening phone call with other jurors); *Tarango v. McDaniel*, 837 F.3d 936, 940-41 (9th Cir. 2016) (police officers who were investigators and witnesses in the case followed a holdout juror on his drive to the courthouse). Nor is there any evidence that extraneous information became part of the jury's deliberations. *Compare with Godoy*, 861 F3d at 969-970 (juror's continuous communication with

"judge friend" concerning case during trial and disclosure to other jurors what "judge friend" said). Nor is there evidence that the contact affected the jury in any way because there is no evidence that the deliberating jurors were even aware of the contact.[1]

### C. The Defense Has Not Established A Credible Risk That the Conversation Influenced the Verdict.

In the absence of contact with an actual juror, the defense suggests that the conversation "occurred just outside the wood and glass doors of the courtroom where the deliberating jurors were seated." Dkt. 141 at 5. The basis for this assertion appears to be the defense investigator Ms. Page's declaration summarizing her interview with the alternate juror. Significantly, however, Ms. Page's declaration is ambiguous as to whether the alternate juror specifically identified "Courtroom 8" as the courtroom outside which the conversation occurred.[2] *See* Dkt. 141-2 at 1-2. That the alternate juror would recall the number of the courtroom is dubious. By contrast, Ms. Wachs, Mr. Lopez, and Agent Timbang have all unequivocally attested that the conversation occurred outside of the trial courtroom.

At best, the defense has raised the speculative possibility that the conversation took place outside Courtroom 8. Beyond that, the defense's theory requires the additional speculative steps that jurors noticed the conversation from inside the doors of a closed courtroom, and that they were influenced as a result. Speculative assertions are insufficient to trigger the presumption of prejudice. *Godoy*, 861 F.3d at 967; *see also United States v. Robertson*, 473 F.3d 1289, 1294-95 (10th Cir. 2007) (finding conversation between juror and court clerk unrelated to trial "was insufficient evidence to give rise to the *Remmer* presumption").

Even assuming that the conversation took place outside the deliberation courtroom—which it did not—*and* assuming it was seen by the deliberating jurors, the defense has not articulated a credible theory of prejudice to the defendant. "There is no presumption that the jury was exposed to extrinsic

---

[1] The contact here with an alternate is less serious than cases involving contact with jurors where courts have declined to find prejudice. *See United States v. English*, 92 F.3d 909, 913-14 & n.6 (9th Cir. 1996) (elevator encounter between jurors and spectators); *United States v. Olano*, 507 U.S. 725, 729-30 (1993) (presence of alternate jurors during jury deliberations); *Smith v. Phillips*, 455 U.S. 209, 212 (1982) (juror's application for investigative position at District Attorney's Office during trial).

[2] For reasons discussed herein, the government submits this ambiguous declaration does not raise a dispute warranting an evidentiary hearing.

information. In fact, there is an opposite presumption that the jury performed its duties faithfully and diligently." *United States v. Caro-Quintero*, 769 F. Supp. 1565, 1574 (C.D. Cal. 1991), *aff'd sub nom United States v. Bernabe-Ramirez*, 42 F.3d 1403 (9th Cir. 1994) (unpublished). Here, the Court instructed the jurors in Jury Instruction Number 4 that they must not consider anything seen or heard outside the courtroom even if what they observed or overheard was done or said by one of the parties or the witnesses. Trial Tr. Vol. 2:10:16-23. Jurors are presumed to follow instructions the Court has given them. *See Jones v. United States*, 527 U.S. 373, 400 n.14 (1999).

Unlike other cases involving negative material inherently harmful to the defendant, the theoretical glimpse of the conversation here raises no such issue. *Compare with Untied States v. Saya*, 247 F.3d 929 (9th Cir. 2001) (affirming denial of a motion for a new trial where juror was exposed and discussed prior incident involving defendant during deliberations because discussion was short, of ambiguous timing, and the case against defendant was otherwise overwhelming); *Tong Xiong v. Felker*, 681 F.3d 1067, 1077 (9th Cir. 2012) (jurors' discussion of their own observations of defense witness' behavior in the hallway at odds with his testimony was "factually distinguishable" in terms of the "nature and magnitude of the interference" from Sixth Amendment cases finding a violation of the right to an impartial jury).

### D. No Evidentiary Hearing Is Warranted.

"An evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias." *United States v. Saya*, 247 F.3d 929, 934-35 (9th Cir. 2001) (citation omitted). In determining whether an evidentiary hearing must be held, "the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id.* at 935. While "it is usually preferable to hold an evidentiary hearing, it is not necessary where the court knows the exact scope and nature of the extraneous information." *Id.* (citing *United States v. Halbert*, 712 F.2d 388, 389 (9th Cir. 1983) (internal quotations omitted)).[3] Here, Defendant has not even requested an evidentiary hearing.

---

[3] *See also United States v. Benjamin*, 958 F.3d 1124, 1136 (11th Cir. 2020), *cert. denied*, No. 20-338, 2020 WL 6037256 (U.S. Oct. 13, 2020) ("[W]here a party alleges that the jury was subject to extrinsic influence . . . a district court has a duty to investigate 'only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality'").

As noted above, there is no contact with a juror alleged here. There is only the defense's speculation that a juror might have observed the alternate's contact with the agent. Even if the Court were to assume that the conversation occurred outside of Courtroom 8, the potential for any prejudice is speculative in this case. The defense has not articulated any reason why the mere fact of observing a conversation between an alternate and a case agent would influence the verdict, nor presented any authority supporting such a conclusion. If an innocuous contact between a juror and a government agent about the facts of the case is insufficient to trigger the presumption of prejudice (*cf. Caliendo*, 365 F.3d at 368), then the innocuous contact here between an alternate and the agent (which the defense has not established was seen by any juror) should not require an evidentiary hearing.

**II.     Conclusion**

For the reasons stated above, the government respectfully requests that the Court deny the defendant's motion for a new trial.

DATED:  December 23, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
DANIEL PASTOR
LINA PENG
Assistant United States Attorneys