UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>OSCAR GUADRON-DIAZ,<br>Defendant. | Case No. 19-cr-00230-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>Docket No. 141 |

Pending before the Court is Defendant Oscar Guadron-Diaz's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Docket No. 141 ("Mot."). From October 30 to November 3, 2020, Mr. Guadron-Diaz stood trial on, and was convicted of, one count of possession of a firearm with serial number removed, obliterated, or altered, 18 U.S.C. § 922(k). Docket Nos. 133–35; 138. Defendant moves for a new trial alleging that his Sixth Amendment right to a trial by an impartial jury was compromised by a private conversation between the Government's firearms expert and one of the alternate jurors. Mot. at 1.

For the following reasons, Defendant's motion is **DENIED**.

## I. BACKGROUND

The jury began deliberations on Defendant's case on the afternoon of November 2, 2020 in Courtroom 9 of the United States District Courthouse in San Francisco. To prevent the spread of COVID-19, the jury conducted its deliberations in Courtroom 8, adjacent to Courtroom 9, instead of the jury deliberation room. After the jury had been excused and directed to Courtroom 8 to begin deliberations, Special Agent Richard Timbang, the Government's investigating officer and firearms expert who testified at trial, had an unauthorized private conversation with alternate juror

number 2. The Government counsel, Daniel Pastor, observed Agent Timbang speaking to the alternate in the hallway and immediately asked Agent Timbang to end the conversation and to come back into the courtroom. Mr. Pastor also explained to Mr. Timbang that he should not be talking to an alternate juror. Mr. Pastor then notified the Court of the conversation. *See* Docket No. 141-1 (Tr.) at 486:3-9.

On the morning of November 3, 2020, at the Court's request, Agent Timbang explained his contact with the alternate as follows:

> Your honor, as I was waiting outside, I was approached by the alternate, who started small talk with me. And he just brought up how he was happy to be here . . . mentioned that he was an immigrant . . . we just started discussing . . . where he immigrated from. And the whole discussion was pretty much that he came from Iran. And we just had small talk for about 10, 15 minutes until AUSA Dan Pastor came up.

*Id.* at 486:22–487:4. The Court then inquired as to whether any of the twelve deliberating jurors were present for this conversation, to which Agent Timbang responded "I don't think so, no." *Id.* at 487:7. The Court then asked whether the twelve jurors were deliberating in Courtroom 8 at the time, to which Agent Timbang responded "[y]es, they were still in the courtroom. We were just right outside the door." *Id.* at 487:10-12.

That afternoon, the jury rendered a verdict, finding Mr. Guadron-Diaz guilty of one count of possession of a firearm with serial number removed, obliterated, or altered. Docket No. 138.

On November 12, 2020, alternate juror number 2 was interviewed by a licensed private investigator working for defense counsel. *See* Docket No. 141-2 (Decl. of Investigator Lindsay Page In Supp. of Mot. ("Page Decl.")). The alternate confirmed that he had a conversation with Agent Timbang in the hallway just outside of Courtroom 8 after the jurors had gone in to deliberate. *Id.* at 1–2. According to the alternate, he initiated the conversation by asking Agent Timbang where the nearest gas station was located. *Id.* at 2. After discussing the alternate's flat tire, they talked about general issues involving fairness in society. *Id.* The alternate then told the agent he was happy with how the court had run the case during the pandemic and that the judge had asked good questions throughout the trial. *Id.* The alternate estimated that the conversation lasted about five minutes and ended when a group of people who he believed were the part of the

1  prosecution team called Agent Timbang over. *Id.*

2  On December 2, 2020, Mr. Guadron-Diaz filed this motion for a new trial.

## II.  LEGAL STANDARD

Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Inzunza*, 638 F.3d 1006, 1026 (9th Cir. 2009) (quoting *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992)). Accordingly, a district court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000) (quoting *Alston*, 974 F.2d at 1211).

## III.  DISCUSSION

Courts evaluate allegations of improper contact between a juror and an outside party under a two-step framework. *Godoy v. Spearman*, 861 F.3d 956, 959 (9th Cir. 2017) (en banc). "At step one, the Court asks whether the contact was 'possibly prejudicial,' meaning it had a 'tendency' to be 'injurious to the defendant.'" *Id.* (quoting *Mattox v. United States*, 146 U.S. 140, 150 (1892)). "If so, the contact is 'deemed presumptively prejudicial' and the court proceeds to step two, where the 'burden rests heavily upon the [Government] to establish' the contact was, in fact, 'harmless.'" *Id.* (quoting *Remmer v. United States* (*Remmer I*), 347 U.S. 227, 229 (1954). Unless the Government shows that the contact was harmless, the Court must grant the Defendant a new trial. *See Remmer v. United States* (*Remmer II*), 350 U.S. 377, 382 (1956). If the prejudicial effect of the contact is unclear from the existing record at step two, "the trial court must hold a 'hearing' to 'determine the circumstances [of the contact], the impact thereof upon the juror, and whether or not it was prejudicial.'" *Godoy*, 861 F.3d at 959 (quoting *Remmer I*, 347 U.S. at 229–30)).

Here, the Court concludes at step one that the contact between Agent Timbang and the alternate was not "possibly prejudicial." *Mattox*, 146 U.S. at 150. As a result, there is no need to shift the burden to the Government to establish that the contact was harmless or to hold an evidentiary hearing. The conversation was with an alternate juror who never participated in the

deliberations, and there is no evidence he communicated with the deliberating jurors after the incident. Mr. Guadron-Diaz's sole argument to the contrary is that "[t]he courtroom doors are constructed of wood with glass panels that permitted the deliberating jurors to observe [the conversation between Agent Timbang and the alternate]." Mot. at 4. There are several problems with this argument. First, Mr. Guadron-Diaz has not submitted any evidence that any of the deliberating jurors actually observed the conversation between Agent Timbang and the alternate. It is mere speculation to assume that the deliberating jurors observed the conversation simply because the doors of the courtroom where the deliberations took place had glass panels. The glass panels consist of narrow strips of glass. Nothing suggests Agent Timbang and the alternate juror were within the field of view of the jurors, or that they could be heard. Without more, Mr. Guadron-Diaz cannot satisfy his burden at step one. *See Godoy*, 861 F.3d at 967 ("The defendant's burden at step one cannot be met by '[t]hreadbare or speculative allegations' of misconduct." (quoting *Tarango v. McDaniel*, 837 F.3d 936, 947 (9th Cir. 2016)).

The Ninth Circuit cautioned in *Godoy* that "'allegations involving prosaic kinds of jury misconduct,' such as 'chance contacts between witnesses and jury members—while passing in the hall or crowded together in an elevator,' [do not] trigger the presumption" of prejudice at step one. 861 F.3d at 967 (quoting *Tarango*, 837 F.3d at 947, 951)). Therefore, Mr. Guadron-Diaz's contention that "[e]ven casual 'banter' can have a substantial influence on how jurors perceive a witness' credibility of the merit of the government's case" has no legs unless he credibly alleges that the deliberating jurors in fact overheard the "casual banter" between Agent Timbang and the alternate.

All of the cases Mr. Guadron-Diaz relies on are inapposite because they involve contacts between third parties and a *deliberating juror*, not an alternate. *See e.g.*, *Godoy*, 861 F.3d at 958 ("Juror 10 'kept continuous communication' with the 'judge friend' 'about the case' and passed the judge's responses on to the rest of the jury."); *United States v. O'Brien*, 972 F.2d 12, 13 (1st Cir. 1992) ("[D]efense counsel informed the court that Matthew Morais, a police officer who had been summoned as a Government witness, engaged in a conversation with three jurors in the corridor during a recess."); *United States v. Williams*, 822 F.2d 1174, 1186 (D.C. Cir. 1987)

4

("Williams' second claim of error stems from remarks addressed by a defense witness to three jurors at the end of the first day of deliberations."). Moreover, virtually every case where the Ninth Circuit has granted a new trial or required an evidentiary hearing has involved a deliberating juror. *See, e.g.*, *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691 (9th Cir. 2004) ("A detective who provided testimony that was crucial to the prosecution's case had a twenty-minute conversation, factually unrelated to the trial, with three jurors in the hallway during a break in deliberations."); *United States v. Brande*, 329 F.3d 1173, 1175-77 (9th Cir. 2003) (contact between juror and court officer, in which court officer questioned juror's ability to find defendants guilty of a crime given juror's religious beliefs, required evidentiary hearing). Surely, had the exact same conversation occurred between Agent Timbang and one of the deliberating jurors, it would have had a "'tendency' to be 'injurious to [Mr. Guadron-Diaz].'" *Godoy*, 861 F.3d at 958 (quoting *Mattox*, 146 U.S. at 150). The presumption of prejudice, which arises in cases of improper contact with deliberating jurors, does not apply to the circumstances here.

Accordingly, Mr. Guadron-Diaz's motion for a new trial is **DENIED** because the Court concludes at step one of the *Godoy* framework that the conversation between Agent Timbang and an alternate does not raise a presumption of prejudice.

This order disposes of Docket No. 141.

**IT IS SO ORDERED**.

Dated: February 22, 2021

_____
EDWARD M. CHEN
United States District Judge

5